UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

LIGHTNING DOCK GEOTHERMAL HI-01, LLC., et al,

Case No. 17-10567 t11
(jointly administered)

Debtors.

## OPINION

This matter came before the Court on June 5, 2017 for a preliminary hearing on Debtors' Application to Employ Modrall, Sperling, Roehl, Harris & Sisk P.A. ("Modrall") as Special Counsel, doc. 28 ("Original Application"), and the supplement thereto filed May 4, 2017, doc. 236 (the "Supplement to Application" and together with the original application, the "Application"). Appearances were noted on the record. Zhejiang Kaishan Holding Croup Co. Ltd, Zhejiang Tongrong Energy Service Co. Ltd, and Zhejiang Kaishan Compressor Co., Ltd. (together, the "Kaishan Entities") objected to the application, doc. 155, and supplemented the objection on June 6, 2017, doc. 273 (together, the "Objection"). Having considered the arguments of counsel, reviewed the record, and reviewed applicable law, the Court concludes that no conflicts of interest preclude Modrall's employment as special counsel for the limited scope Debtors' propose.

I. BACKGROUND[1]

Debtors operate a geothermal power plant near Animas, New Mexico. Cyrq Energy, Inc. is Debtors' corporate parent. Prepetition, the Kaishan Entities[2] sold the electricity-generating

---

[1] The facts are based on judicial notice of the dockets in Debtors' case. Any facts taken from case history found in the record were construed in the light most favorable to Kaishan. These facts only relate to application to employ, and are not meant to be used for any other purpose, in particular to establish facts at a later proceeding.

[2] Defined as Zhejiang Kaishan Holding Croup Co. Ltd, Zhejiang Tongrong Energy Service Co. Ltd, and Zhejiang Kaishan Compressor Co. Ltd.

equipment Debtors use in the geothermal plant. Thereafter, the Kaishan Entities purchased from CITIC Securities Company Limited its position in about $20 Million of secured note obligations owed by Debtors. The Kaishan Entities are by far the biggest secured and unsecured creditors in the jointly administered cases.

A major issue in the cases is who is to blame for significant problems Debtors have experienced with the Kaishan generating equipment. The dispute, and the Debtors' default under the secured notes now held by the Kaishan Entities, generated substantial pre-petition litigation.

Debtors filed chapter 11 petitions on March 14, 2017. They retained Walker & Associates, P.C. as general bankruptcy counsel pursuant to 11 U.S.C. § 327(a).[3]

By an order entered May 2, 2017, the Court authorized Debtors to borrow up to $33,500,000 from Cyrq. Debtors plan to use the debtor-in-possession financing to operate in Chapter 11 and to "repower" the geothermal plant by replacing the Kaishan equipment with more conventional generating equipment manufactured by Turboden S.P.A., an affiliate of Mitsubishi Heavy Industries.

Lightning Dock filed a plan of reorganization on April 25, 2017. Under the plan, Cyrq would receive all of the reorganized debtor's equity, in satisfaction of Cyrq's pre-petition and DIP loan claims. *See* Doc. 213, p. 21. The plan also provides the Kaishan Entities' allowed claims would be paid in full. *Id.* at 19-20.

Prepetition, Modrall represented Debtors and/or Cyrq in the following matters (the "Pending Litigation"):

    A.    *AmeriCulture v. Cyrq Energy, Inc., Raser Power Systems, LLC, Los Lobos Renewable Power, LLC, Lightning Dock Geothermal HI-01, LLC, and David Ramirez,* New Mexico State Court, No. D-623-CV-2015-00037;

---

[3] All statutory references are to 11 U.S.C.

B. *AmeriCulture v. Oil Conservation Commission,* New Mexico State Court, No. D-101-CV-2015-02731 (Debtors are not currently a party, but may be joined as defendants in the future);

C. *Los Lobos Renewable Power, LLC, et al. v. AmeriCulture, Inc. et al,* United States Court of Appeals for the Tenth Circuit, No. 16-2046; and

D. *Rosette, Inc. v. Lightning Dock Geothermal Hi-01, LLC,* New Mexico State Court, No. D-623-CV-2016.

In the Original Application, Debtor sought permission to employ Modrall to, inter alia, "[p]rovide corporate or transactional legal services within the context of the Chapter 11 Cases." In the Supplement to Application, Modrall clarified that its representation would be limited to:

> [T]he Pending Litigation…, water rights, operations and development of Debtor's geothermal resources in Hidalgo County, New Mexico, administrative proceedings, other litigation, including claims objections, that may arise, litigation and/or claims objections involving entities referred to as the Kaishan Group and others involved in those transactions, and other aspects of the bankruptcy proceeding that relate to the aforementioned

(the "Proposed Scope of Services"). *See* Supplement to Application, p. 4.

As stated, Kaishan objected to the Application. In particular, Kaishan argues Modrall is not disinterested, and has a disqualifying conflict because it represents Cyrq.

At the June 5, 2017, preliminary hearing, Modrall's representative (Paul Fish) confirmed that the firm's duties would be limited to the Proposed Scope of Services, which excludes general bankruptcy advice or services. For example, Mr. Fish stated that Modrall did not work on Debtors' plan or disclosure statement, apart from reviewing certain claim reservation language to ensure that the reorganized debtors would pursue certain causes of action.

Having reviewed the record and the papers, the Court concludes, as the Kaishan Entities requested, that it is appropriate to rule on the Application without an evidentiary hearing. Kaishan's counsel did an excellent job framing the issues at the June 5, 2017 hearing. After conducting over 15 hearings involving Debtors, Cyrq, and Kaishan, and after reviewing Lightning

-3-
Case 17-10567-t11    Doc 282    Filed 06/08/17    Entered 06/08/17 15:08:36 Page 3 of 7

Dock's chapter 11 plan, the Court is satisfied that the record contains enough information upon which to rule on the Application.

## II. DISCUSSION

A. <u>Employing Special Counsel Under 11 U.S.C.§ 327(e)</u>. Section 327(e) authorizes a debtor[4] to employ special counsel as follows:

> The trustee, with the court's approval, may employ, for a special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

Debtor's special counsel may be an attorney who would be ineligible for employment as general bankruptcy counsel under §327(a). *See, e.g., In re Olson,* 2006 WL 2433448, * 1 n. 1 (Bankr. D. Idaho) (comparing §§ 327(a) and 327(e)).

Section 327(e) has four requirements:

    1) the proposed special counsel represented the debtor previously;

    2) the proposed special counsel must be employed by the trustee only for a limited, special purpose;

    3) the proposed representation must be in the best interest of the estate; and

    4) there must be no conflict with the debtor or the estate arising from the matters for which the trustee seeks to engage special counsel.

*See In re Hart Oil & Gas, Inc.,* 2013 WL 3992252, * 2 (Bankr. D.N.M.) (quoting *In re Potter*, 2009 WL 2922850, at *1 (Bankr. D.N.M. 2009)). *See also In re Running Horse, LLC*, 371 B.R. 446, 451 (Bankr. E.D. Cal. 2007) (articulating the same requirements, except for the previous representation of the debtor).

Modrall represented Debtors in the Pending Litigation. Debtors now seek to retain Modrall

---

[4] Section 327(e) refers to the trustee, and a debtor in possession has all of a trustee's rights, powers, and duties pursuant 11 U.S.C. § 1107.

to provide services as set out in the Proposed Scope of Services. The Debtors may ask Modrall to file and litigate certain claim objections, but Modrall would not be permitted to investigate and object to claims generally. *See, e.g., In re Neuman,* 138 B.R. 683, 685-686 (S.D.N.Y. 1992) (special counsel cannot be vested with the authority to investigate and object to government claims); *In re First American Health Care of Georgia, Inc.,* 1996 WL 33404562, at *6 (Bankr. S.D. Ga. 1996) (debtor cannot retain special counsel to handle the claim objection process).

Walker & Associates would continue to represent Debtors in "conducting the case," which includes "those matters which form part a part of the administration of the case under the Code, *e.g.*, …, assisting in the formulation of a plan and assisting the trustee in carrying out the required investigations." 3 *Collier on Bankruptcy* (16th ed.), ¶327.04[9][c]. *See also In re Woodworkers Warehouse, Inc.*, 323 B.R. 403, 407 (D. Del. 2005) (proposed special counsel could be employed because its duties did not include assisting in negotiating, formulating, finalizing or seeking confirmation of a plan); *In re Tidewater Memorial Hospital, Inc.*, 110 B.R. 221, 227-28 (Bankr. E.D.V.A. 1989) (the "special purpose to be served by counsel appointed under § 327(e) must not be related to the debtor's reorganization since this is tantamount to representing the debtor in the conduct of the case").

To date, Walker & Associates represented Debtors in the "first day" hearings; in obtaining approval of DIP financing, an amended agreement with Public Service Company of New Mexico, and a "repowering" contract; in opposing a motion to appoint an examiner; and in drafting a plan and disclosure statement. Modrall was not involved in any of these general bankruptcy matters.

The Court overrules Kaishan's argument that Modrall's representation of Cyrq creates a disqualifying conflict. There is no pretense that Cyrq, which owes Debtors, is an unrelated third party. There also is no question that Cryq and the Kaishan Entities (like Debtors and the Kaishan

Entities) are adverse. As counsel for Debtors within the Proposed Scope of Services, Modrall would not represent "any interest adverse to the debtor," nor would Modrall's proposed simultaneous representation of Cyrq and Debtors violate state law rules of professional conduct. *See e.g. In re Neuman*, 138 B.R. 683, 687 (S.D.N.Y. 1992) (employment under 327(e) should not be approved if it would violate the attorney's "general obligation to decline representation where there is a prohibited conflict of interest"); Rule 16-109(A) of the New Mexico Rules of Professional Conduct (a lawyer cannot represent two clients whose interests are materially adverse).

Pursuing the proposed litigation could benefit the estate and holders of allowed claims and equity interests. Under these circumstances, the Court finds that Modrall does not have a disqualifying conflict because it represents Cyrq. *See, e.g., In re Microwave Products of America, Inc.,* 104 B.R. 900, 904 (Bankr. W.D. Tenn. 1989) (declining to find a conflict under § 327(e) where there was an ongoing relationship between the attorney and debtor's parent company).

In their supplement, the Kaishan Entities argue for the first time that a subordination agreement Cyrq signed pre-petition creates a disqualifying conflict of interest. The Court has reviewed the subordination agreement, and disagrees. The Kaishan Entities make several creative arguments about how the subordination agreement should be construed, and what effect the agreement might have on Cyrq's rights under the DIP financing documents. Without ruling on the arguments, the Court finds that the subordination agreement creates no disqualifying conflicts at this time. If at some later date the potential conflict ripens into actual, serious conflict, the Court may revisit the issue.

## III. CONCLUSION

The Court concludes Modrall meets the requirements to be employed as special counsel under § 327(e), to represent Debtors in the proposed scope of services. The Court overrules Kaishan's argument that Modrall's representation of Cyrq disqualifies Modrall from acting as Debtors' special counsel in the matters proposed. The Court will enter a separate order consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 8, 2017

Copies to:

All case participants listed in CM/ECF